IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BOB CALDWELL AUTOMOTIVE, INC.,

    **Plaintiff,**

    v.                                     Civil Action 2:22-cv-2067
                                          Judge James L. Graham
                                          Magistrate Judge Jolson

MEREDITH RATLIFF, et al.,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Discovery and Motion for Sanctions (Doc. 38). For the following reasons, the Motion is **GRANTED**. Defendants are **ORDERED** to supplement their production consistent with this Opinion and Order on or before November 28, 2022. McHugh and Ryan are **ORDERED** to pay eighty-eight percent of Plaintiff's reasonable expenses incurred in making the Motion, including attorney's fees. Plaintiff is **ORDERED** to produce an itemized list of such expenses and fees to McHugh and Ryan on or before November 28, 2022. McHugh and Ryan shall have twenty-one days from receipt of the list to pay the award.

**I.    BACKGROUND**

This case involves two competitor automobile dealerships: Plaintiff Bob Caldwell Automotive, Inc. and Defendant McHugh, Inc. d/b/a McHugh Chrysler Dodge Jeep Ram FIAT ("McHugh"). (Doc. 1 at 1). As alleged, Defendants Timothy Ryan and Meredith Ratliff "abruptly left their employment with [Plaintiff] in December of 2020 and January of 2021, respectively, to work for McHugh." (*Id.*). Plaintiff says that Ryan, Ratliff, and McHugh engaged in an illegal

scheme to misuse Ryan and Ratliff's knowledge about Plaintiff to gain a competitive advantage. (*Id.*).

First, Plaintiff says Defendants surreptitiously accessed its Client Relationship Management database ("CRM") to obtain "confidential, sensitive, and proprietary information regarding [Plaintiff's] customers, prospective customers, and its business transactions . . . ." (*Id.*). Particularly, it says that since Ryan and Ratliff left employment with Plaintiff, the CRM was accessed over 250 times from IP addresses associated with McHugh. (*Id.* at 2). The CRM is like "a playbook for how [Plaintiff] has managed each customer account[,]" and the information therein would enable Defendants to solicit current and prospective customers from Plaintiff to themselves. (*Id.*, ¶ 13). Further, Plaintiff says that McHugh recruited nearly a dozen of its employees "in violation of Ryan's non-solicitation agreement." (*Id.* at 2).

Shortly after this action began, the District Judge entered a Preliminary Injunction Order, in which he determined that Plaintiff's rights "with respect to its property, proprietary and confidential information and competitive interests . . . likely have been and will continue to be violated by one or more Defendants unless they are restrained therefrom[.]" (Doc. 19 at 1). The Order further required Defendants to "take all necessary steps to preserve all potentially relevant evidence regarding the allegations in the Complaint[.]" (*Id.* at 3). To ensure that relevant evidence was exchanged expediently, the District Judge then set an expedited discovery schedule. (Doc. 20). The schedule required the parties to meet several production deadlines in June and July of 2022. (*Id.*). But, near the end of July, Plaintiff requested additional time for discovery, noting that Ratliff consented to the extension, but that "[d]espite several inquiries, Defendants Ryan and McHugh have not responded to Plaintiff's messages regarding the Motion." (Doc. 27, ¶ 8). Ryan and McHugh share counsel, while Ratliff has her own representation. The Court extended the

discovery deadline until September 2, 2022. (Doc. 28).

As that deadline approached, Plaintiff sent a letter to the Court, requesting an informal telephone conference to address ongoing issues in discovery. Specifically, Plaintiff noted that Ratliff had responded to Plaintiff's deficiency letters regarding her production during discovery and supplemented her production, but a few disputes remained at an impasse. But, of more concern, Plaintiff represented that McHugh and Ryan had not responded at all to its deficiency letters, or its proposed protocol for the forensic computer search mandated by the Preliminary Injunction Order, despite several inquiries. The Court set a telephone conference for August 29, 2022. (Doc. 29). Continuing their pattern of non-response, counsel for McHugh and Ryan failed to appear at the conference. (Doc. 30).

Accordingly, the Court ordered counsel for McHugh and Ryan to contribute to a joint status report with counsel for the other parties or else appear for a Show Cause hearing. (*Id.*). Counsel for McHugh and Ryan noticed his failure to appear at the telephone conference (Doc. 31) and joined the subsequent joint status report (Doc. 33). So the Court slightly extended the discovery deadline once again to allow the parties to resolve their disputes and proceed with the litigation. (Doc. 34). Yet, as that deadline approached, Plaintiff once again represented, in a letter to the Court, that counsel for McHugh and Ryan had stopped responding to its attempts to litigate the case consistent with the District Judge's Order. The Court set another telephone conference, indicating that in the days preceding the conference the parties would have a final chance to confer before the Court set an expedited briefing schedule on a Motion to Compel. (Doc. 36). They were further warned that failure to participate in good-faith conferral would result in costs being assessed against non-prevailing parties. (*Id.*). As several issues were still at an impasse when the conference was held, the Court set an expedited briefing schedule for Plaintiff's Motion to Compel.

3

(Doc. 37). Still more, because counsel for McHugh and Ryan had largely failed to confer on the proposed forensic computer protocol, they were given a few days to finalize the protocol to settle only marginal details.[1]

Now, Plaintiff has filed the present Motion to compel production from all Defendants and for sanctions against McHugh and Ryan only. (Doc. 38). The Motion is fully briefed (Docs. 39, 41, 42, 43, 44)[2] and ripe for consideration.

## II. STANDARD

Two federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician*

---

[1] To the extent McHugh and Ryan's counsel had attempted to confer on the protocol, the attempts were unreasonable, such as demanding that the entire search be conducted in Ryan's office.
[2] To comply with Local Rule 5.1(c), McHugh and Ryan refiled their response in opposition as a text-searchable document. Accordingly, though two otherwise duplicate versions exist on the docket (Docs. 39, 43), the Court will cite to the later-filed version for consistency. Similarly, Ratliff filed two versions of her response (Docs. 41, 42), and the Court will do the same.

4

*Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

> Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure further provides:
>
> (5) Payment of Expenses; Protective Orders.
>
> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

## III. DISCUSSION

The Court considers Plaintiff's requests to compel discovery against each Defendant in turn, before considering the request for sanctions.

### A. Meredith Ratliff

Plaintiff and Ratliff have made meaningful conferral efforts to narrow their disputes, so only a few remain. (Doc. 38-2 at 11; Doc. 42 at 1). Ratliff briefly argues that because "Plaintiff spent the entirety of both conferences addressing its concerns relating to Defendants McHugh and Ryan[,]" it has not exhausted extrajudicial means of resolving its disputes related to her production, and its Motion is premature. (Doc. 42 at 1). The Court disagrees. The existence of ongoing disputes with Ratliff was noted at the telephone conferences, and the Court was clear that any

outstanding disputes needed to be resolved or else brought in the Motion to Compel, so that discovery could be completed. Indeed, the Court's Order setting an expedited briefing schedule noted that "any response in opposition" to the Motion—that is, one from McHugh and Ryan, or from Ratliff—would need to be filed within fourteen days of the Motion. (Doc. 37). The disputes are properly raised in the Motion and ready for resolution.

### 1. Interrogatory No. 7

Ratliff was asked to identify each time, from January 1, 2021 to present, that she logged into Plaintiff's CRM system, and to further identify any McHugh employees with whom she shared CRM information. (Doc. 38-4 at 6). Ratliff responded that her alleged logins could be found in already-produced discovery that she identified by Bates number and stated further that she did not share any information "regarding Caldwell." (*Id.*). Plaintiff is concerned that Ratliff is making a semantic but significant distinction in claiming that she did not produce information regarding Plaintiff when the interrogatory specifically asked about Plaintiff's CRM. (Doc. 38-2 at 11). Ratliff contends she has nothing responsive to the interrogatory that was not disclosed. (Doc. 42 at 3). Regardless, Ratliff can supplement her interrogatory to address specifically whether she in any way shared information from the CRM with McHugh employees. In this respect, Plaintiff's Motion is **GRANTED**.

Plaintiff has represented it would be suspect of an answer from Ratliff stating that she had not shared any CRM information with McHugh employees. (Doc. 38-2 at 11) ("Plaintiff is aware of at least two occasions where Ratliff printed out client information from Caldwell's CRM for two different McHugh employees."). Yet Plaintiff is reminded that each unfavorable or unlikely answer is not necessarily an incomplete one. Still more, all parties are reminded that should they furnish an incomplete answer, sanctions may follow. The Court notes this at the outset because

6

similar suspicions underlie several of Plaintiff's requests.

### 2. Document Requests Nos. 3–7

Ratliff was asked to produce several categories of documents and communications related to her employment with McHugh and communications with Plaintiff's former customers about doing business with McHugh. (Doc. 38-4 at 9–11). She responded that she had no such documents to produce—in part because her communications with McHugh regarding her employment were verbal (*id.*), which she still maintains (Doc. 42 at 3). Plaintiff responds that "easily accessible documents such as her W-2 or a tax return would provide relevant information[,]" as would her phone records. The Court agrees.

Any earnings statements or tax documents, which Ratliff is likely to have under her control, will illuminate the nature of her employment and compensation. Similarly, if she had only verbal communications with McHugh and/or its customers, her phone records (which she should have relatively little difficulty obtaining) will shed light on when, how often, and with whom those conversations occurred. In this respect, Plaintiff's Motion is **GRANTED**.

### 3. Document Request No. 8

The parties were able to resolve their dispute with regard to this document request. (Doc. 42 at 3). Accordingly, Plaintiff withdrew this portion of its Motion. (Doc. 44 at 7).

### B. McHugh, Inc.

Plaintiff seeks a range of relevant discovery from McHugh. McHugh allowed for little conferral with Plaintiff, and the requests are therefore voluminous.

### 1. Interrogatories Nos. 2–3

McHugh was asked to identify all persons any of its employees, agents, or representatives attempted to recruit or solicit to leave Plaintiff and join McHugh, as well as the time, date, and

manner of communications with those individuals. (Doc. 38-3 at 11–12). It was further asked to identify, in chronological order, each communication involving McHugh or its employees relating to the potential or actual employment at McHugh of a former employee of Plaintiff. (*Id.* at 12). McHugh's initial responses were simply "nobody" and "none." (*Id.* at 12–13). After further consultation of the parties, it became clear that McHugh objected to the language about solicitation and recruitment, which it believes cannot occur when one of Plaintiff's employees contacts McHugh first. (Doc. 38-2 at 5; Doc. 43 at 2–3). Subsequently, McHugh produced a list of ten employees who left Plaintiff to work for McHugh, whom it says contacted McHugh first. (Doc. 43 at 3).

Plaintiff says McHugh needs to do more, describing the communications and providing any records, including "phone records, calendar entries, text messages, etc. relating to communications with these employees[.]" (Doc. 38-2 at 5). McHugh counters that description of these communications requires a "narrative response[,]" and that because it conducted all communications verbally, no records of the communications exist. (Doc. 43 at 3–4). First, the Court notes that objecting to an interrogatory on the basis that it asks for a narrative response is insufficient, as there is no prohibition on interrogatories which "seek narrative or other expansive detail." *Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989). Still more, the Court notes that the request does not "ask for a detailed narrative of 'the opposing parties' case,' but rather for a chronology of this Defendant's actions." *Smith v. Montgomery Cty. Sheriff's Office*, No. 3:10-cv-448, 2012 WL 871255, at *1 (S.D. Ohio Mar. 14, 2012) (citing *Babcock Swine*, 126 F.R.D. 43). McHugh must, to the best of its ability, describe the at-issue communications.

Second, the Court acknowledges that records of communications like text messages and emails will not be available if McHugh solely communicated with these individuals verbally. But

8

that does not mean McHugh altogether lacks pertinent records. The Court agrees with Plaintiff that McHugh's phone records should be produced for this purpose. In these respects, Plaintiff's Motion is **GRANTED**.

### 2. Interrogatory No. 4

McHugh was asked to identify and describe all communications from January 1, 2020 to present with Plaintiff's current or former customers which relate to doing business with McHugh. (Doc. 38-3 at 13). It provided only a list of ten known McHugh customers who previously did business with Plaintiff. (*Id.*). McHugh seemingly ignored the request to describe the at-issue communications with those individuals, which Plaintiff says McHugh must now do. (Doc. 38-2 at 6). McHugh again relies on its representations that all communications were verbal, and again argues that description of the communications requires "an unduly burdensome narrative response." (Doc. 43 at 4–5). While the Court understands that there may be limitations in McHugh's ability to attest to details about verbal communications, it must undertake good-faith efforts to describe what details it can about these communications—and it has not even attempted to do so. In this respect, Plaintiff's Motion is **GRANTED**.

### 3. Interrogatory No. 6

McHugh was asked to identify any of Plaintiff's customers that also did business with McHugh, from January 1, 2020 to present, and describe the business with and revenues generated by each such customer. (Doc. 38-3 at 14). Despite previously identifying at least ten such known customers, McHugh responded "none." (*Id.*). Plaintiff asks that McHugh describe the business it has done with Plaintiff's customers and the revenues generated by each customer. (Doc. 38-2 at 6). McHugh did not respond to this portion of Plaintiff's Motion. (*See* Doc. 43). In this respect, Plaintiff's Motion is **GRANTED**.

9

### 4. Interrogatory No. 7

McHugh was asked to describe in detail the terms, conditions, and job responsibilities of Ryan and Ratliff, including any applicable agreements or compensation plans.  (Doc. 38-3 at 14). Instead, it merely provided Ryan's and Ratliff's titles, and objected to the balance of the interrogatory on the grounds that it was not likely to lead to admissible evidence and is irrelevant. (*Id.*).  Plaintiff says McHugh should respond in full (Doc. 38-2 at 7) while McHugh renews its concerns about relevance (Doc. 43 at 6–7).  This information is unmistakably relevant to Plaintiff's claims.  If Ryan or Ratliff was compensated or otherwise received incentives based on bringing new customers or employees to McHugh, for instance, it might bear on their willingness to participate in the alleged scheme.

McHugh further says it has complied with this interrogatory by responding "that the Defendants did not receive renumeration based on illegal access by Defendant Ratliff to Plaintiff's CRM system and Defendant Ryan did not receive any renumeration based on allegedly unlawful solicitation[.]"  (*Id.* at 6–7).  But this is an attempt to impose its own view of the case on Plaintiff. Compensation plans or other employment agreements which might not on their face address solicitation or illegal activity might nonetheless incentivize those practices, and McHugh may not withhold facts based on its own belief otherwise.  Accordingly, it must describe Ryan's and Ratliff's employment in detail.  In this respect, Plaintiff's Motion is **GRANTED**.

### 5. Interrogatory No. 8 and Document Request No. 7

Similarly, McHugh was asked to identify and produce any file it maintains on Ryan and Ratliff, as well as any documents reflecting its own policies for dealing with confidential or proprietary information.  (Doc. 38-3 at 14, 18–19).  McHugh again objected on the grounds that the requests were not likely to lead to the discovery of admissible evidence (*id.*) and continues to

do so now (Doc. 43 at 7). Again, the information sought is relevant to the central issues of this case because it relates directly to Ryan's and Ratliff's employment at McHugh. In this respect, Plaintiff's Motion is **GRANTED**.

### 6. Document Requests Nos. 1–3 and 5–6

McHugh was asked to produce various documents related to the recruitment and hiring of any of Plaintiff's former employees, including offer letters, employment contracts, and bonus structures. (Doc. 38-3 at 17–8). McHugh uniformly responded "none." (*Id.*). McHugh maintains that no responsive documents exist because "[c]ommunication with any of Plaintiff's employees who approached Defendants was face-to-face." (Doc. 43 at 7). Plaintiff responds that various document requests ask for much beyond communications, so this answer is unsatisfactory. (Doc. 44 at 3). To the extent McHugh has responsive documents to the portions of the requests that might not include communications, such as employment contracts, it must produce them, or else confirm that it does not maintain such records. In this respect, Plaintiff's Motion is **GRANTED**.

### 7. Document Request No. 4

McHugh was asked to produce all communications between it and Ratliff and it and Ryan from January 1, 2020 to present. (Doc. 38-3 at 18). McHugh responded "see attached" (*id.*) and attached about 100 pages of communications (Doc. 38-2 at 8). But Plaintiff says "it is not clear whether an e-mail search was conducted for relevant communications." (*Id.*). McHugh did not respond to this portion of Plaintiff's Motion. (*See* Doc. 43). McHugh must supplement its response to indicate whether an email search was conducted and include any other responsive communications. In this respect, Plaintiff's Motion is **GRANTED**.

### 8. Document Request No. 8

McHugh was asked to produce documents relating to any vehicle services offered to or

performed for its customers between January 2021 to March 2022. (Doc. 38-3 at 19). McHugh objected on the grounds that the request was vague and overly broad. (*Id.*). Plaintiff then stated it would limit the request to Plaintiff's former and current customers. (Doc. 38-2 at 8). McHugh still objects to production because it claims there is no way to know which customers the businesses have in common and because there is nothing illegal about McHugh providing services to those individuals. (Doc. 43 at 8). To the first point, McHugh has already provided a list of ten known customers who were also current or former customers of Plaintiff. At the very least, it can provide documents related to services offered to or performed for those customers. To the second point, material must be relevant to be discoverable—whether it is illegal in-and-of-itself has no bearing. The requested documents are clearly relevant to the alleged scheme and the damages Plaintiff claims to have suffered thereby. In this respect, Plaintiff's Motion is **GRANTED**.

9. **Document Request No. 9**

McHugh was asked to produce all documents, communications, phone invoices, and records reflecting communications between it and Plaintiff's customers. (Doc. 38-3 at 19). McHugh objected on the grounds that the request was vague and overboard. (*Id.*). Plaintiff says that particularly, McHugh's phone records should track these communications. (Doc. 38-2 at 8). McHugh says "[t]here is no way for [it] to crosscheck [its] phone records against customer records to determine when any of Plaintiff's former customers were contacted." (Doc. 43 at 8). This is difficult to believe. McHugh has already identified customers in common and presumably it also maintains customer phone numbers for contact purposes. The "crosscheck" is simply comparing those phone numbers to the phone records. Still more, Plaintiff has offered to do the leg work, and conduct the searches itself so long as McHugh produces its phone records. (Doc. 44 at 4). In this respect, Plaintiff's Motion is **GRANTED**.

12

### 10. Document Request No. 10

McHugh was asked to produce all documents used by McHugh employees which were obtained by Plaintiff's former employees from Plaintiff's files. (Doc. 38-3 at 19). McHugh responded: "None that we are aware of. This request should be directed to Defendant Ratliff." (*Id.*). Plaintiff says that it is "unclear whether any diligent inquiry was conducted in this request. (Doc. 38-2 at 9). McHugh says it "has no reason to believe that any of its employees accessed any Caldwell document other than Defendant Ratliff." (Doc. 43 at 9). While McHugh may not have any responsive documents, the Court agrees with Plaintiff that McHugh must verify that it has undertaken a diligent inquiry to confirm that. Vague responses that McHugh is not "aware of" such documents or has "no reason to believe" they exist are insufficient. At this stage, it must do more to explain if and how it inquired into what potentially responsive materials its employees possessed and produce any responsive materials should they exist. In this respect, Plaintiff's Motion is **GRANTED**.

### C. Timothy Ryan

As with McHugh, there was little productive conferral by Ryan, and the Court must resolve several outstanding disputes.

#### 1. Interrogatory No. 4

Ryan was asked to identify all persons he attempted to recruit or solicit to leave Plaintiff and join McHugh, as well as the time, date, and manner of communications with those individuals. (Doc. 38-3 at 3). He responded "none." (*Id.*). In other words, the request and response are analogous to Interrogatory No. 2 served on McHugh, discussed in detail above. To the extent Ryan personally communicated with any of the ten employees who left Plaintiff to join McHugh about their employment at McHugh, he must identify those persons, and, to the best of his ability,

13

describe the communications. In this respect, Plaintiff's Motion is **GRANTED**.

### 2. Interrogatory No. 5

Ryan was asked to identify and describe all communications from January 1, 2020 to present with Plaintiff's current or former customers which relate to doing business with McHugh. (Doc. 38-3 at 3–4). He provided only a list of ten known customers who previously did business with Plaintiff. (*Id.* at 4). In other words, the request and response are analogous to Interrogatory No. 4 served on McHugh, discussed in detail above. Ryan must, to the best of his ability, describe the at-issue communications. In this respect, Plaintiff's Motion is **GRANTED**.

### 3. Interrogatory No. 7

Ryan was asked to identify all email addresses and phones he used from January 1, 2020 to present. (Doc. 38-3 at 4). He responded with only an incorrectly spelled email address. (*Id.*; Doc. 43 at 11). Subsequently, he provided the correct email address and a cell phone number. (Doc. 43 at 11). Plaintiff asks that Ryan also provide the make, model, and service provider of his cell phone. (Doc. 38-2 at 10). Ryan resists providing this information, despite the ease with which he could produce it, on the grounds that "[i]t is not part of any discovery request that has been made." (Doc. 43 at 11). The requested information is clearly within the purview of the interrogatory; whether it could have been informally requested in the brief window between September 22, 2022, when Ryan made a final attempt to supplement his responses, and September 28, 2022, when Plaintiff brought the instant Motion, is immaterial. Ryan must provide the requested information. In this respect, Plaintiff's Motion is **GRANTED**.

### 4. Interrogatory No. 8

Ryan was asked to identify all devices, including phones and computers, he used from January 1, 2020 to present. (Doc. 38-3 at 4). He responded "none." (*Id.*). He later clarified that

14

he has a cell phone and uses a work computer.  (Doc. 43-2 at 2).  Plaintiff asks that he simply confirm that he does not have a personal computer.  (Doc. 38-2 at 10).  Ryan refuses to do so, again on the grounds that the "information was not previously sought in a properly framed interrogatory . . . ."  (Doc. 43 at 11).  As above, this is not proper grounds for withholding information.  Ryan must provide the requested clarification.  In this respect, Plaintiff's Motion is **GRANTED**.

       **5. Document Requests**

Nine document requests were served on Ryan, but he responded that he had no responsive documents to each.  (Doc. 38-3 at 6–8).  Analogous to the document requests served on Ratliff, Plaintiff asserts that Ryan is likely to have at least some documents related to his employment and communications with McHugh and Plaintiff's former customers, like a W-2 or phone records.  (Doc. 38-2 at 10).  As with Ratliff, the Court agrees that tax documents, earnings statements, and phone records—all of which should be easily accessible to Ryan—are responsive to the requests and should be provided.  In this respect, Plaintiff's Motion is **GRANTED**.

       **D. Sanctions**

Plaintiff asks the Court to award sanctions against McHugh and Ryan only.  (Doc. 38-2 at 12–13).  Particularly, Plaintiff says that McHugh and Ryan's dilatory conduct during discovery, including ignoring Plaintiff's deficiency letters for months, necessitated the present Motion and Plaintiff's expenses in preparing it.  (*Id.*).  McHugh and Ryan respond that they have been timely in their responses, and their responses were not deficient.  (Doc. 43 at 12–15).  At base, they say that there is "no basis for the Motion to Compel," and therefore "no basis for sanctions against these Defendants."  (*Id.* at 13).  The Court finds that, given the egregious deficiencies in McHugh and Ryan's discovery responses, and their dilatory and elliptical conduct during the discovery

process, the award of sanctions is appropriate.

Whether sanctions should be awarded is a matter about which the Court possesses substantial discretion. *See Ruiz-Bueno v. Scott*, 2:12-cv-0809, 2014 WL 1764578, at *2 (S.D. Ohio May 1, 2014) (citation omitted). In arguing that there is no proper basis for the Motion to Compel, McHugh and Ryan are in essence arguing that the award of sanctions is not appropriate because their responses and objections were "substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii). Substantially justified has elsewhere been defined as raising an issue about which "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

As has been detailed above, McHugh and Ryan's responses and objections were not reasonable. They routinely failed to provide clearly relevant information within their possession. When they lacked some of the documents or information requested by Plaintiff, they used that fact to reject a request in its entirety. And they hid behind their legal disagreements with Plaintiff— about whether "solicitation" or "recruitment" occurred—to avoid providing all the facts relevant to the employees and customers to which they understood Plaintiff was referring. This is particularly flagrant given that the District Judge ordered that Defendants take all necessary steps to preserve and produce relevant evidence. (*See* Doc. 19). McHugh and Ryan cannot earnestly maintain that it is unreasonable to produce discovery like phone records, employment contracts, and vehicle service records, when the District Judge has already ordered that they "make available for inspection and imaging any computers, external storage devices, mobile devices, and all personal Cloud and email accounts used or accessed by Ryan and Ratliff . . . [.]" (Doc. 19 at 3).

Further, the Sixth Circuit has held that any award of sanctions under Rule 37 is reviewed

16

using four factors: (1) whether the party against whom the sanction is sought has acted willfully, in bad faith, or with fault; (2) whether the movant was prejudiced; (3) whether the party against whom the sanction is sought was warned that sanctions could follow a failure to cooperate; (4) and whether less a drastic sanction is considered. *Doe*, 407 F.3d at 765–66.

Regarding the first factor, the Court reviews the timeline of events which preceded the Motion to Compel. Plaintiff propounded its discovery requests on Ryan and McHugh on June 17, 2022, and received responses on July 15, 2022. (Doc. 38-2 at 2) (citing Doc. 38-3). These responses were replete with obvious and unjustified deficiencies. To reiterate just a few, as thoroughly discussed above: Ryan incorrectly provided his own email address, and failed to acknowledge that he used a cell phone; when asked to describe the terms, conditions, and responsibilities of Ryan's and Ratliff's positions, McHugh merely provided their job titles; and, when McHugh was asked to identify customers it shared with Plaintiff, it responded there were none and refused to provide documents related to services it rendered to them despite elsewhere identifying ten such customers. Plaintiff then sent deficiency letters to McHugh and Ryan on July 25, 2022, and did not receive any response "despite several inquiries." (*Id.* at 2–3). Because the deadline for discovery was approaching, Plaintiff had to seek Court intervention, and the Court set a telephone conference. (Docs. 28, 29). Counsel for McHugh and Ryan failed to appear, requiring the Court to set a Show Cause hearing. (Docs. 29, 30).

Eventually, on September 1, 2022, counsel for Ryan and McHugh responded to Plaintiff's July 25, 2022 deficiency letters on behalf of McHugh only. (Doc 43-1). Then, on September 22, 2022, the day before the Court was to set a briefing schedule for the Motion to Compel, counsel sent another correspondence attempting to address the deficiencies on behalf of both Ryan and McHugh. (Doc. 43-2). But these correspondences were argumentative, offered little additional

information, and did not correspond with the production of any additional documents. Overall, McHugh and Ryan have acted with fault throughout the discovery process.

Second, McHugh and Ryan's failure to participate in discovery has prejudiced Plaintiff. Particularly, Plaintiff has had to pursue extrajudicial resolution, bring the instant Motion, and suffer unnecessary delay in discovery that should have been completed months ago. Third, all parties were previously warned that a failure to participate in good-faith conferral efforts to resolve these disputes could result in costs being assessed again the non-prevailing parties. (Doc. 36). Finally, less drastic sanctions were considered, but nothing short of compensation is appropriate here.

Recognizing that a portion of this Motion concerned disputes with Ratliff, against whom sanctions were not requested, the Court assesses a portion of Plaintiff's costs in preparing the instant Motion against McHugh and Ryan. The Court was called upon to resolve two disputes involving Ratliff and fifteen disputes involving McHugh and Ryan. Eighty-eight percent of the disputes (fifteen of seventeen) were therefore necessitated by McHugh and Ryan's conduct. Accordingly, McHugh and Ryan are **ORDERED** to pay eighty-eight percent of Plaintiff's reasonable expenses incurred in making the Motion, including attorney's fees.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Discovery and Motion for Sanctions (Doc. 38) is **GRANTED**. Defendants are **ORDERED** to supplement their production consistent with this Opinion and Order on or before November 28, 2022. McHugh and Ryan are **ORDERED** to pay eighty-eight percent of Plaintiff's reasonable expenses incurred in making the Motion, including attorney's fees. Plaintiff is **ORDERED** to produce an itemized list of such expenses and fees to McHugh and Ryan on or before November 28, 2022. McHugh and Ryan

shall have twenty-one days from receipt of the list to pay the award.

    IT IS SO ORDERED.

Date:  November 4, 2022　　　　　　　　　　　　/s/ Kimberly A. Jolson
                                                                                           KIMBERLY A. JOLSON
                                                                                           UNITED STATES MAGISTRATE JUDGE