IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BOB CALDWELL AUTOMOTIVE, INC.,

      Plaintiff,

  v.                                                       Civil Action 2:22-cv-2067
                                                          Judge James L. Graham
                                                          Magistrate Judge Jolson

MEREDITH RATLIFF, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on the Response to Order to Show Cause filed by Defendants McHugh Inc. and Timothy Ryan (Doc. 55). For the following reasons, the Court finds that McHugh and Ryan have failed to obey the Court's order for discovery and orders an award of expenses to Plaintiff under Federal Rule of Civil Procedure 37(b)(2)(C). Particularly, McHugh and Ryan are **ORDERED** to pay Plaintiff's reasonable expenses incurred in attempting to ensure their compliance with the Court's November 2022 Opinion and Order, including attorney's fees. Plaintiff is **ORDERED** to produce an itemized list of such expenses and fees to McHugh and Ryan on or before September 8, 2023. McHugh and Ryan shall have twenty-one days from receipt of the list to pay the award.

**I.    BACKGROUND**

The Court previously summarized the background giving rise to this action:

This case involves two competitor automobile dealerships: Plaintiff Bob Caldwell Automotive, Inc. and Defendant McHugh, Inc. d/b/a McHugh Chrysler Dodge Jeep Ram FIAT ("McHugh"). (Doc. 1 at 1). As alleged, Defendants Timothy Ryan and Meredith Ratliff "abruptly left their employment with [Plaintiff] in December of 2020 and January of 2021, respectively, to work for McHugh." (*Id.*). Plaintiff says that Ryan, Ratliff, and McHugh engaged in an illegal scheme to misuse Ryan and

> Ratliff's knowledge about Plaintiff to gain a competitive advantage. (*Id.*).
>
> First, Plaintiff says Defendants surreptitiously accessed its Client Relationship Management database ("CRM") to obtain "confidential, sensitive, and proprietary information regarding [Plaintiff's] customers, prospective customers, and its business transactions . . . ." (*Id.*). Particularly, it says that since Ryan and Ratliff left employment with Plaintiff, the CRM was accessed over 250 times from IP addresses associated with McHugh. (*Id.* at 2). The CRM is like "a playbook for how [Plaintiff] has managed each customer account[,]" and the information therein would enable Defendants to solicit current and prospective customers from Plaintiff to themselves. (*Id.*, ¶ 13). Further, Plaintiff says that McHugh recruited nearly a dozen of its employees "in violation of Ryan's non-solicitation agreement." (*Id.* at 2).
>
> Shortly after this action began, the District Judge entered a Preliminary Injunction Order, in which he determined that Plaintiff's rights "with respect to its property, proprietary and confidential information and competitive interests . . . likely have been and will continue to be violated by one or more Defendants unless they are restrained therefrom[.]" (Doc. 19 at 1). The Order further required Defendants to "take all necessary steps to preserve all potentially relevant evidence regarding the allegations in the Complaint[.]" (*Id.* at 3). To ensure that relevant evidence was exchanged expediently, the District Judge then set an expedited discovery schedule. (Doc. 20).

(Doc. 45 at 1–2).

That schedule required that the parties meet several discovery production deadlines in mid-2022. (Doc. 20). After Plaintiff requested a short extension to the discovery deadline (Doc. 27), issues regarding production by Defendants were brought before the Court. Of particular concern, McHugh and Ryan had not responded to Plaintiff's several inquires regarding deficiencies in their production—and when the Court set a telephone conference on the disputes, counsel for McHugh and Ryan failed to appear. (Doc. 30). While McHugh and Ryan thereafter began communicating again with the Court and Plaintiff, the parties' disputes continued (Doc. 37), and Plaintiff filed a motion to compel production from McHugh and Ryan and requested that they pay Plaintiff's reasonable expenses incurred in bringing the motion (Doc. 38).

The Court granted both requests, noting that McHugh and Ryan had "routinely failed to provide clearly relevant information within their possession[,]" and that this was particularly

2

flagrant given the District Judge's early directive in the case that "Defendants take all necessary steps to preserve and produce relevant evidence." (Doc. 45 at 16) (citing Doc. 19). The Court ordered that McHugh and Ryan make supplemental production—which included, in part, both their phone records and Ryan's tax documents and earnings statements—by November 28, 2022. (*Id.* at 9, 15, 18).

But months later, in April 2023, Plaintiff informed the Court that McHugh and Ryan failed to do so. (Docs. 47, 48). What followed was a murky explanation of why. McHugh and Ryan first represented that they had not produced their phone records because already produced customer files purportedly contained phone logs which would list any calls made to Plaintiff's customers, and because "any phone records pertaining to such calls . . . would have to be obtained from the phone company itself." (Doc. 28 at 3–4). Further, Ryan had challenged Plaintiff's request for "tax returns and bank statements" on the grounds that they had not been "sought in discovery requests to begin with[.]" (*Id.* at 5). This despite the Court's earlier directive that "tax documents, earnings statements and phone records . . . should all be easily accessible to Ryan" and were "responsive to [Plaintiff's] requests . . . ." (Doc. 45 at 15).

Things got murkier still. The Court held a status conference on the disputes (Doc. 49), at which counsel for McHugh and Ryan represented to the Court for the first time that the stumbling block in producing his clients' phone records was that both providers required a Court order before they would produce records. Notably, this was the reason Defendant Ratliff had been unable to produce her own phone records in a timely fashion, but she had represented this from the first instance in which the parties described their disputes. (Doc. 48 at 6). The Court also questioned at that status conference why at least partial records could not be collected through the providers' online portals, and whether any diligence had been undertaken by McHugh and Ryan to that effect.

3

Immediately following the status conference, the Court ordered counsel for McHugh and Ryan to file a declaration describing in detail his efforts to obtain his clients' phone records. (Doc. 50).

> Counsel then declared that:
>
> Mr. Ryan indicated that he had called Verizon, his cell phone carrier, on several occasions and had continuously been advised that a court order would be necessary. Subsequently he was told to contact the help desk, but when doing so he was unable to make any progress toward obtaining the records. Finally, he enlisted the assistance of his son, who went through the help desk and was able to access phone logs back to November 2021. I now have those records in my possession and will be forwarding them, by mail, to Plaintiff's counsel. I have contacted Verizon myself, by phone, and been provided with a fax number and an address for the Verizon Legal Department and been advised that a fax needs to be sent to the Legal Department specifying a request for records going back beyond November 2021. My understanding is that Defendant Ratliff began working for McHugh in January 2021 so the request for phone records would go back to that time. I am sending a fax to Verizon's Legal Department requesting guidance on how to obtain the phone records from Mr. Ryan's cell phone from January 2021 through the end of October 2021. I will continue to follow-up on that.
>
> …
>
> [McHugh's] service provider is Charter Communication/Spectrum. As indicated, I was told previously that a court order was necessary. I explained to the client that this was not a sufficient response. The office manager for McHugh then contacted Spectrum and was able to have a ticket created to add their voice service to their online portal. He was told that once this was added they would be able to retrieve the current year's outgoing call data and possibly last year's. I explained that was not sufficient as we needed the records back to January 2021. As a follow-up, I contacted Spectrum and spoke with a representative over the phone. The office manager had processed a request for what's called a CDR Call Record Request. When I called and spoke with a representative of Spectrum, I advised that we needed to obtain the phone records for incoming and outgoing calls back to January 2021. I was told that the request would be processed and that the records would be mailed to McHugh. Upon receipt of them, I will provide copies, by mail, to Plaintiff's counsel.

(Doc. 53 at 1–2).

In its Order to Show Cause, the Court noted its skepticism that certain representations in the declaration had evidentiary support. (Doc. 54 at 1). Namely, the Court questioned why counsel had not represented from the beginning that both his clients had been told they would need a court

4

order for their records, nor why McHugh's provider seemingly changed course out of nowhere to allow a simple request for records by mail instead. (*Id.* at 1–2). The Court explained that sanctions under Federal Rule of Civil Procedure 11 may be appropriate for making factual contentions without evidentiary support. (*Id.*). Still more, the Court stated it would consider sanctions under Federal Rule of Civil Procedure 37 because counsel's delayed attempts to obtain phone records which had been ordered to be produced months prior suggested a failure "to obey an order to provide or permit discovery[.]" (*Id.* at 2) (quoting Fed. R. Civ. P. 37(b)(2)(A)).

Counsel for McHugh and Ryan then responded to the Order to Show Cause, asserting that all information in his declaration was accurate to the best of his knowledge, and he had made reasonable efforts to obtain records. (Doc. 55). Additionally, he represented that partial production of the phone records had been made, and more was forthcoming. (*Id.*). The parties then requested some additional time to complete discovery (Doc. 56), which the Court granted (Doc. 57). But they made no representation at that time which discovery was outstanding. (*See* Doc. 56). So, before assessing whether sanctions were appropriate, the Court asked the parties for a final joint status report regarding whether the production mandated by the Court's November 2022 Opinion and Order had been finished. (Doc. 58). That report, filed six weeks after counsel's response to the Order to Show Cause, revealed that portions of the phone records were still missing, and those that had been produced—along with tax returns and bank statements—had been produced in the days immediately proceeding the deadline for the status report. (Doc. 60 at 4) (noting that Ryan's tax returns and bank statements were sent to Plaintiff "on Monday of this week" and his phone records were sent to Plaintiff "yesterday").

With this information, the Court considers the sanctions noticed in its Order to Show Cause.

5

## II. STANDARD

First, Federal Rule of Civil Procedure 37 allows for sanctions where a party "fails to obey an order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2)(A). These sanctions include designating facts in favor of the non-offending party, prohibiting the introduction of evidence at trial, striking pleadings, dismissing the action, entering a default judgment, and treating the offending conduct as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). Instead of or in addition to those sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 11 requires, in pertinent part:

> (b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support . . .

Fed. R. Civ. P. 11(b)(3). If the Court finds, after notice and a reasonable opportunity to respond, that Rule 11(b) has been violated, it may impose an appropriate sanction on the violating attorney or party. Fed. R. Civ. P. 11(c)(1). These sanctions must be designed to deter similar conduct and may include nonmonetary directives, an order to pay a penalty into court, or a payment of fees and expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4).

## III. DISCUSSION

Having considered the conduct of McHugh, Ryan, and their counsel, the Court finds that they have failed to obey the Court's order for discovery—and because Plaintiff has suffered

6

expense in trying to remedy their failure—the Court orders an award of expenses under Rule 37(b)(2)(C). Additional sanctions under Rule 37(b)(2)(A)(i)–(vii) and Rule 11 may be warranted, but as Plaintiff has indicated it "intends to file a motion seeking adverse inferences against [ ] Defendants" (Doc. 60 at 1), the Court will hold a ruling on these sanctions in abeyance until such time as Plaintiff has requested that relief and the motion has been fully briefed by the parties.

    A. *Rule 37 Award of Expenses*

The Court must enforce its orders, and the record is clear that McHugh and Ryan disobeyed the Court's November 4, 2022 Opinion and Order without substantial justification. So, at a minimum, an award of expenses under Rule 37(b)(2)(C) is required.

The Court appreciates that obtaining records from third parties can be "time consuming." (Doc. 60 at 4). But, that time should have been spent from the moment the Court's Opinion and Order issued, in November 2022, and in the many intervening months since. And that time could have been spent more urgently and effectively. Consider Defendant Ratliff's attempts at securing her phone records. Far from exemplary, she also failed to comply with the Court's initial deadline, and for months after. But her corrective actions once the dispute came before the Court were much more diligent. First, she represented from the outset that—after making several attempts at obtaining records from Verizon—she was told finally that she would need a court order. (Doc. 48 at 6). Then, following the Court's May 10, 2023 status conference, she sent a proposed order to the Court for review the very next day. It was adopted (Doc. 52), and she immediately went to work to secure her phone records. She produced those records to Plaintiff on June 12, 2023. (Doc. 60 at 5).

McHugh and Ryan, on the other hand, came to the May 10, 2023 status conference with no concrete idea about what was required to obtain their records. And, though they represent that

7

they made some inroads at partial collection of those records in June (*see* Doc. 55), further production did not occur until the days immediately preceding the status report considered in conjunction with these sanctions. On July 6, 2023, the Court ordered a joint status report on the completeness of the at-issue production, so it could consider compliance with its previous Opinion and Order. (Doc. 58). On July 19, 2023, the parties submitted that status report, in which Ryan stated he had produced his phone records the day prior, on July 18. (Doc. 60 at 3). And, notably, Plaintiff represented those records were still not complete. (*Id.* at 2). Similarly, Ryan's tax returns and bank statements—also at issue in the Opinion and Order—had been provided to Plaintiff only two days prior to the submission of the status report. (*Id.*). McHugh, for its part, said that it still did not know when its "second batch" of phone records would be mailed by its provider, so it had no timeframe for when they might be produced to Plaintiff. (*Id.* at 3–4).

This all suggests that McHugh and Ryan undertook serious efforts at production only at the Court's repeated urging, and only with the threat of sanctions hanging over them. And they still, by July 2023, had not obeyed the directive in the Court's November 2022 Opinion and Order. This dilatory conduct in discovery comes at a cost to everyone—to Plaintiff, to the Court, and to McHugh and Ryan themselves. But, most cognizably here, it has come at the cost of Plaintiff's reasonable attorney's fees and expenses as its counsel has tried repeatedly—before the Court and in meet-and-confer with Defendants' counsel—to collect the discovery to which it is entitled. Accordingly, McHugh and Ryan are **ORDERED** to pay Plaintiff's reasonable expenses incurred in attempting to ensure their compliance with the Court's November 2022 Opinion and Order, including attorney's fees.

B. *Further Sanctions*

Finally, the Court notes that Defendants have been given wide latitude in discovery.

Plaintiff appears to have worked earnestly and patiently to allow Defendants to correct deficiencies in their production. And though the Court appreciates thoughtful attempts at extrajudicial resolution of disputes, the time has passed for all parties to adopt a sense of urgency. Fact discovery is set to close on August 31, 2023, and the Court has no intention of extending that deadline. If there is unproduced discovery at that time, more serious sanctions may be appropriate. Plaintiff has already indicated it may pursue such sanctions. (*See* Doc. 60 at 1). And it will be best for the Court to consider such sanctions on complete briefing by the parties. Accordingly, the Court holds any consideration of sanctions under Rule 37(b)(2)(A)(i)–(vii) in abeyance until such time as there may be a fully briefed motion before the Court.

Similarly, the Court will not decide whether to order Rule 11 sanctions at this time. The Court noticed it was considering Rule 11 sanctions because apparent inconsistencies in counsel's representations about his clients' attempts to obtain their phone records suggested those representations may have lacked evidentiary support. (Doc. 54). Namely, counsel did not at first indicate that either of his clients had been told a court order would be necessary to obtain their records. (Doc. 48). Rather, they seemed to say that customer files they provided were a sufficient substitute, and contact would have to be made—by Defendants or by Plaintiff—if further records were sought. (*Id.* at 3–4) ("Neither Defendant Ryan [n]or Defendant McHugh has any phone records pertaining to such calls as these would have to be obtained from the phone company itself."). Still more, counsel later declared that though McHugh had been told it needed a court order to obtain records, it was ultimately determined that a simple request for the records by mail would suffice. (Doc. 53).

In his response to the Order to Show Cause, counsel says that he failed to mention the need for a court order in the initial status report because his clients' portion of the status report "was not

9

intended as a detailed summary of everything that had been done to obtain the phone records." (Doc. 55 at 2). The Court understands that the joint status report may not have been an exhaustive accounting of all efforts, but the question remains why a major detail—like the need for Court intervention—was not highlighted initially. Further, the need for a court order for either client never materialized. Ratliff's contention was that she needed a court order from Verizon (also Ryan's carrier) "[b]ecause of various changes to [her] account," which Verizon's legal department said made her unable "to access her phone records in a traditional way." (Doc. 48 at 6). Ryan never represented that he made similar changes to his account, never sought an order from the Court, and instead obtained his records through a subpoena to Verizon. (Doc. 60 at 3). Regarding McHugh's similar inconsistencies about whether a court order was actually necessary, counsel says that these are due to inconsistent statements by representatives at the phone companies, and counsel "cannot explain why different people at these phone companies provided different information at different times . . . ." (Doc. 55 at 1).

To be certain, there is doubt surrounding counsel's representations. Yet, the Court will reserve making any determination about Rule 11 sanctions until such time as there may be a fully briefed motion before the Court.

IV. **CONCLUSION**

For the foregoing reasons, the Court finds that McHugh and Ryan have failed to obey the Court's order for discovery and orders an award of expenses to Plaintiff under Rule 37(b)(2)(C). McHugh and Ryan are **ORDERED** to pay Plaintiff's reasonable expenses incurred in attempting to ensure their compliance with the Court's November 2022 Opinion and Order, including attorney's fees. Plaintiff is **ORDERED** to produce an itemized list of such expenses and fees to McHugh and Ryan on or before September 8, 2023. McHugh and Ryan shall have twenty-one

days from receipt of the list to pay the award.

    IT IS SO ORDERED.


Date:  August 18, 2023　　　　　　　　　　　　/s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE